# In the United States District Court for the Southern District of Georgia Brunswick Division

```
PATRICK ROETHER, and
HOLLIE ROETHER,

    Plaintiffs,
                                              221-cv-083
    v.

STATE OF GEORGIA,
STATE OF TENNESSEE,
COUNTY OF McINTOSH, TN,
McINTOSH COUNTY DEPARTMENT OF
FAMILY AND CHILD SERVICES,
COUNTY OF BENTON, TN,
COUNTY OF HOUSTON, TN,
COUNTY OF CARROLL, TN,
CHRISTINE LAMBRIGHT, in her
capacity as Deputy Sheriff of
Benton County,
STEVE JESSUP, in his capacity
as Sheriff of McIntosh County,
CHRISTOPHER CHAPMAN, in his
capacity as Deputy Sheriff of
McIntosh County,
ALLEN PERRY, in his capacity
as Deputy Sheriff of McIntosh
County,
VICKY LEE, in her capacity as
Deputy Sheriff of McIntosh
County,
ALICIA GRAY,
JAMES CHAMBERLIN
SGMC YOUTHCARE
JOHN LEDWICH, III, CPNP,
DR. DANIEL B. COLLIPP, D.O.,
ANDY DICKSON, in his capacity
as Sheriff of Carroll County,
KEVIN SUGG, in his capacity as
Sheriff of Houston County,
MATTHEW STOWE,
```

```
CHRISTY BALBO, in her capacity
as Judge of McIntosh County
Juvenile Court,
MOLLY McILVAINE,
DESTINY GONZALEZ,
BRENNAN,
GEORGIA DEPARTMENT HUMAN
SERVICES,
GEORGIA DEPARTMENT OF RISK
MANAGEMENT,
GEORGIA DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
BRANTLEY COUNTY, GA,
LEE DAVIS,
ISABELLA AMOR,
WADE BENNETT,
JOHN SIMPSON,
OFFICE OF THE SHERIFF OF
McINTOSH COUNTY, GA,
OFFICE OF THE SHERIFF OF
BENTON COUNTY, TN,
OFFICE OF THE SHERIFF OF
CARROLL COUNTY, TN,
OFFICE OF THE SHERIFF OF
HOUSTON COUNTY, TN,
OFFICE OF THE SHERIFF OF
BRANTLEY COUNTY, GA,
COL. DANNY LOWE, and
DOES 1-100,

     Defendants.
```

## **ORDER**

Before the Court are eight different motions to dismiss, filed by, in order of filing:

1) Defendant South Georgia Medical Center ("SGMC") Youthcare, dkt. no. 279,

2) The State of Tennessee and District Attorney General Matthew Stowe, dkt. no. 281,

2

3) John Ledwitch, III, CPNP, dkt. no. 283,

4) The State of Georgia, Georgia Department of Human Services ("DHS"), Georgia Department of Risk Management,[1] the Georgia Department of Health and Human Services Division of Family and Children Services ("DFCS"), and McIntosh County DFCS[2] (collectively, the "Georgia State Defendants"), dkt. no. 285,

5) Benton County, TN, Benton County Sheriff's Department, Sheriff Kenny Christopher, Christina Lambright, and Alan Bolan, dkt. no. 286,

6) Carroll County, TN, Carroll County Sheriff's Department, Sheriff Andy Dickson, Houston County, TN, Houston County Sheriff's Department, and Sheriff Kevin Sugg, dkt. no. 287,

7) Daniel Collipp, dkt. no. 288,

8) Christy Balbo, Wade Bennett, Brantley County Sheriff's Office, Letitia Brennon, James Chamberlin, Christopher Chapman, Brantley County, GA, McIntosh County, GA, Len Davis, Destiny Gonzalez, Steve Jessup, Vicky Lee, Danny

---

[1] The state of Georgia has a Risk Management Services Division within the Georgia Department of Administrative Services ("DOAS"), but no "Department of Risk Management." As noted by the Georgia State Defendants, see dkt. no. 285 at 1 n.1, this is likely who Plaintiffs meant to sue, and the Court will presume as much barring evidence from Plaintiffs as to the existence of the Department of Risk Management.

[2] McIntosh County DFCS is an office of the Georgia Division of Family and Children Services, which itself is simply a division of DHS. See Dkt. No. 285 at 1 n.2.

Lowe, Molly McIlvaine, Allen Perry, John Simpson, James Stenander, Rebecca Todd, Harold A. Webster, III, and Cody Davis, dkt. no. 290.

For the following reasons, Defendants' motions to dismiss are **GRANTED** and Plaintiffs' complaint is **DISMISSED with prejudice.**

## BACKGROUND

Plaintiffs have filed a 149-page, 759-paragraph amended complaint against fifty-two named defendants and one hundred Jane and/or John Does. Dkt. No. 275.

In essence, Plaintiffs' complaint tells of how both Plaintiffs were arrested at different points, and their two children, LR and YR, were taken from them and placed in foster care without Plaintiffs' consent. Id. ¶¶ 84-130 (first arrest of both Plaintiffs and initial placement and treatment of LR and YR in McIntosh County). Plaintiffs also make allegations of "torture" while Plaintiff Hollie Roether was detained. Id. ¶¶ 131-48 (torture allegations), ¶¶ 131-66, ¶¶ 204-19 (Hollie Roether's arrest and detainment in McIntosh County).

Plaintiffs allege that the McIntosh County Defendants then sought to "strategically pick a crime to charge Plaintiffs with," id. ¶ 167, in an attempt to put LR and YR in DFCS custody, id. ¶¶ 168-86. Plaintiffs appear to object to the entire process by which DFCS removed their children, see id. ¶¶ 220-46, ¶¶ 360-420,

4

as well as to being arrested for charges they do not name, see supra, id. ¶¶ 131-66, ¶¶ 204-19; see also id. ¶¶ 247-356.

Plaintiffs next allege they were retaliated against for unrelated Freedom of Information Act requests made in 2018 regarding a September 2014 arrest in Benton County, Tennessee. Id. ¶¶ 421-49. Plaintiffs also complain about an incident in December 2012 when Tennessee's version of DFCS ("DFCS TN") seized Ms. Roether's son and daughter, BH and KH, from her house, see id. ¶¶ 450-60, as well as another unrelated incident in March 2012, id. ¶¶ 461-66. Plaintiffs allege these incidents are related because DFCS TN's records were allegedly used in 2019 to keep LR and YR in foster care. Id. ¶¶ 467-68.

Plaintiffs then allege three Counties—Williamson, Davis, and Brantley—all had a policy of committing constitutional violations. Id. ¶¶ 472-87. Finally, Plaintiffs finish the fact section of their amended complaint by referring back to allegations contained in their original complaint that Ms. Isabella Amor engaged in unlawful activity by bringing a frivolous action against Plaintiffs for destruction of property, see id. ¶¶ 488-98; see also dkt. no. 248 at 5-6 (citing dkt. no. 1 ¶¶ 183-232).

All told, Plaintiffs allege twenty-eight claims against the above-named defendants, including: twenty-four federal rights claims, of which eighteen involve either the Fourth or Fourteenth

5

Amendment, two state law claims, a six-paragraph Monell claim against McIntosh, Houston, Carroll, Benton, Brantley, Jessup, and Williamson Counties (a few of which are in Georgia), see id. ¶¶ 688-94, and, perplexingly, a deceptive business practices claim against the states of Georgia and Tennessee, id. ¶¶ 752-58.

Defendants have filed motions to dismiss on a number of grounds, see, e.g., dkt. no. 280 at 7-8 (SGMC seeking dismissal pursuant to O.C.G.A § 9-11-9.1), 282 at 4 (Tennessee and Matthew Stowe seeking dismissal due to Tenn. Code Ann. § 9-8-307(b), arguing that Plaintiffs waived their claims against these Defendants by previously filing claims based on the relevant incident with the Tennessee Claims Commission), 283 at 8-10 (Ledwitch seeking dismissal for lack of service of process), and almost all Defendants have sought to dismiss Plaintiffs' amended complaint with prejudice on grounds that it is a shotgun pleading. See Dkt. Nos. 283 at 2-8, 285-1 at 2-4, 286-1 at 18-19, 287-1 at 13-16, 288 at 2, 290 at 8-16. The amended complaint most certainly is a shotgun pleading. Plaintiffs' original complaint was a shotgun pleading as well, and this Court gave specific instructions on how to remedy those errors. See Dkt. No. 248.  Because Plaintiffs ignored those instructions and did not remedy the errors in their original complaint, their amended complaint must be **DISMISSED.**

6

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint, in order to state a claim for relief, contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To that end, the rules also prescribe a particular form for pleadings. Federal Rule of Civil Procedure 10(b) provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323. For this reason, "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings" as "[t]hey waste scarce judicial resources, 'inexorably broaden[] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine the public's respect for the courts.'" Vibe Micro, Inc.

7

v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (citations omitted) (alterations accepted); see also Barmapov v. Amuial, 986 F.3d 1321, 1329 (11th Cir. 2021) (Tjoflat, J., concurring).

The Eleventh Circuit has described four main types or categories of shotgun pleadings. The first type is a complaint containing "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland, 792 F.3d at 1321. The second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. The third is "one that commits the sin of not separating into a different count each cause of action or claim for relief." Id. at 1323. Finally, the fourth type is a complaint that contains "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id.

Furthermore, the Eleventh Circuit has explained that "[a] district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." Vibe, 878 F.3d at 1295 (quoting Weiland, 792 F. 3d at 1320). Indeed, "[w]hen a litigant files a shotgun pleading, is represented by

8

counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." Id. at 1296. In so doing, "the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." Id. And when, as here, "a pro se plaintiff files a shotgun pleading, a court 'should strike the [pleading] and instruct [plaintiff] to replead the case—if [plaintiff] could in good faith make the representations required by Fed. R. Civ. P. 11(b).'" Shaw v. Scerbo, No. 2:22-cv-00105, 2022 WL 888921, at *2 (M.D. Fla. Mar. 25, 2022) (quoting Byrne v. Nezhat, 261 F.3d 1075, 1133 n.113 (11th Cir. 2001), abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146 (11th Cir. 2011)).

## DISCUSSION

### I.   Defendants' Motions to Dismiss

After reviewing Plaintiffs' amended complaint, the Court finds it is, once again, a shotgun pleading. Plaintiffs' amended complaint commits three of the four "sins" of shotgun pleadings: it 1) contains several conclusory, vague, and immaterial facts not connected with any cause of action, 2) sets forth multiple causes of action under single counts, and 3) contains multiple claims against multiple defendants under single counts.

First, Plaintiffs' amended complaint includes a multitude of immaterial facts not clearly connected with any cause of action alleged. The amended complaint begins with *sixteen* pages of an "Introduction and Opening Statement" full of irrelevant information. See, e.g., Dkt. No. 275 ¶ 3 ("Defendants have exercised exclusive Legislation in these tyrannical judicial systems exceeding the ten Miles square granted by Cession of Virginia and Maryland, and the acceptance of Congress"); ¶ 5 ("Plaintiffs deny being legal persons. Plaintiffs deny being corporate persons."); ¶ 6 ("Plaintiffs have rejected institutionalized churches and sought to return to the early, simple, life deemphasizing material success, rejecting the competitive spirit, and seeking to insulate themselves from the modern world."). After Plaintiffs' meandering introduction comes their fact section, where Plaintiffs provide similarly extraneous information. For example, Plaintiffs provide unnecessary details about Ms. Amor's alleged abandonment of property at Plaintiffs' house, which is never tied to a legal wrong in the amended complaint, id. ¶¶ 488-98.

The rest of the complaint is similarly "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Weiland, 792 F.3d at 1322. A complaint that requires the reader to "speculate as to which

factual allegations pertain to which count," let alone speculate as to which factual allegations pertain to *any* count, has been found time and again to be a shotgun pleading in the Eleventh Circuit. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997); see also Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991) ("[Plaintiff's complaints] are quintessential 'shotgun' pleadings, replete with factual allegations that could not possibly be material to any of the causes of actions they assert.").

What's further: the complaint is neither short nor plain. To the contrary, it is notably long and inexplicably adorned with vague and immaterial facts. Indeed, despite being cautioned to trim their facts and focus solely on relevant issues, Plaintiffs ballooned their amended complaint, increasing the number of pages from 93 to 149 and the numbered paragraphs from 355 to 759.[3] Compare Dkt. No. 1 (93 pages, 355 numbered paragraphs), and Dkt. No. 275 (149 pages, 759 numbered paragraphs).

Second, Plaintiffs' complaint sets forth multiple causes of action or claims for relief under single counts. See, e.g., Bickerstaff Clay Prods. Co. v. Harris Cnty., 89 F.3d 1481, 1484 n.4 (11th Cir. 1996). For example, Count Twenty-Five alleges multiple Defendants violated the Fifth, Sixth, *and* Fourteenth

---

[3] This includes, confusingly, a blank paragraph. See Dkt. No. 275 ¶ 587.

11

Amendments in one claim, see dkt. no. 275 ¶¶ 730-42, and Count Twenty-Eight alleges "Deceptive Business Practices" against Tennessee and Georgia without stating the statute each state has violated, id. ¶¶ 752-58. These poorly identified and delineated counts make it difficult to know what specific causes of action are being asserted against Defendants. What's more: these errors were made despite the Court's highlighting the *same errors* in Plaintiffs' original complaint. Dkt. No. 248 at 11-12.

Third, Plaintiffs' amended complaint alleges multiple claims against multiple defendants without regard to who is responsible for which acts or omissions or whom the claim is brought against. See Weiland, 792 F.3d at 1323. In their amended complaint, Plaintiffs in a single paragraph accuse Defendants Gray, Askew, Perry and Chapman of giving false testimony and Judge Balbo of refusing to correct the record in a hearing based on an allegedly corrupt intent. See Dkt. No. 275 ¶ 241. Plaintiffs then accuse Defendant Ledwitch, SGMC and "one or more of the other Defendant's" of performing an invasive medical exam, id. ¶ 405, and continue this practice of failing to point to a specific Defendant in paragraphs 407, 410, 415, and 417. In a particularly egregious example, Plaintiffs' Monell claim in Count Eighteen is lodged against seven different counties and is exactly six paragraphs long—again failing to explain which County is responsible for what

12

allegations and alleging some (but not all) of these Defendants violated Plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendments. See id. ¶¶ 688-94. This style of pleading fails to give proper notice to each Defendant and leaves them searching, as the Court is, to find who is responsible for which conduct and why.

The appropriate measure for a shotgun pleading is generally to provide Plaintiffs with a chance to replead their claims. See Vibe, 878 F.3d at 1296; Byrne, 261 F.3d at 1133 n.113. Plaintiffs have now had two chances to do so. See Dkt. No. 248 (denying Defendants' first round of motions to dismiss and giving Plaintiffs an opportunity to amend); Dkt. No. 274 (granting Plaintiffs' motion to amend and correct their *first* amended complaint). Plaintiffs were also given instructions on how to remedy their shotgun complaint. See Dkt. No. 248 at 12-13. As discussed *supra*, Plaintiffs ignored those instructions, and as such the proper remedy is dismissal of this action with prejudice. See, e.g., Vibe, 878 F.3d at 1296 (finding a district court "could not have abused its discretion" for dismissing an amended complaint that remained a shotgun pleading after the original complaint was dismissed without prejudice on shotgun pleading grounds and the plaintiff did not fix the identified issues).

**CONCLUSION**

Plaintiffs' amended complaint is, once again, a shotgun pleading. As such, Defendants' motions to dismiss, dkt. nos. 279, 281, 283, 285, 286, 287, 288, 290 are **GRANTED,** and this action is **DISMISSED with prejudice**. This action is **DISMISSED** even to those Defendants who have not yet appeared or filed a motion to dismiss, as the amended complaint is also a shotgun pleading as to them. The Clerk is **DIRECTED** to enter judgment and **CLOSE** this case. Plaintiffs' motion for an extension of time, dkt. no. 326, is **DENIED** as moot.

**SO ORDERED** this 30th day of August, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA